UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


BISSELL HOMECARE, INC.,

                Plaintiff,                                      Hon. Janet T. Neff

v.                                           Case No. 1:13-cv-1182

PRC INDUSTRIES, INC.,

                Defendant.

_____/


**REPORT AND RECOMMENDATION**


This matter is before the Court on Defendant PRC Industries, Inc.'s Motion to Dismiss pursuant to FED. R. CIV. P. 12(b)(2) for Lack of Personal Jurisdiction (Dkt 24). The motion was referred to the undersigned by the Honorable Janet T. Neff for report and recommendation under 28 U.S.C. § 636(b)(1)(B). For the reasons stated herein, the undersigned recommends that the motion be granted, and this case be dismissed for lack of personal jurisdiction.

### I. Procedural Background

Plaintiff Bissell Homecare, Inc., a Grand Rapids, Michigan, based-company (Bissell) filed this trademark infringement action on October 28, 2013 in the Western District of Michigan against Defendant PRC Industries, Inc., based in New York (PRC). Plaintiff's Complaint alleges four counts:

Count 1—Unfair Competition and False Designation of Origin (15 U.S.C. § 1125(a))

Count 2—Federal Trademark Infringement (15 U.S.C. § 1114)

Count 3—Federal Trademark Dilution (15 U.S.C. § 1125(c))

Count 4—Common Law Trademark and Trade Name Infringement

On December 10, 2013, Plaintiff filed a Motion for Preliminary injunction, Emergency

Motion for Expedited Discovery, and Motion for Entry of Protective Order (Dkts 8, 10, 12).

Defendant responded a week later by filing an Answer and seeking dismissal for lack of personal

jurisdiction (Dkts 14, 18). The Court set a briefing schedule on the pending motions (Dkts 22, 23).

After Defendant filed its motion to dismiss for lack of personal jurisdiction on January 17,

2014, Plaintiff filed an Emergency Motion to Compel Limited Discovery on the issue of personal

jurisdiction and for an extension of time to respond to Defendant's motion to dismiss (Dkt 28). In

a January 24, 2014 Order, the Court granted Plaintiff's request for limited discovery, as modified on

Defendant's motion for reconsideration (Or., Dkt 35).

Following limited discovery, Plaintiff filed a Response to the motion to dismiss on March

14, 2014 (Dkt 51). Plaintiff then filed a Motion for Leave to file an Amended Complaint (Dkt 54),

which remains pending. Defendant filed a Reply (Dkt 58), and the Court heard argument from

counsel on the motion to dismiss. Having fully considered the parties' briefs, argument, and the

record, the undersigned recommends that Defendant PRC's motion be granted.

## II. Factual Allegations

The factual allegations in this matter follow. Bissell is a Michigan corporation that

manufactures and sells, *inter alia*, vacuum cleaners for home use, with its principal place of business

in Grand Rapids, Michigan (Compl. ¶¶ 1, 6). Plaintiff owns the entire right, title, and interest in and

to various trademarks and trade names (collectively the "Bissell Marks"), including, but not limited

to, "Bissell," which have been used to identify Plaintiff's products, including vacuum cleaners, in

the United States and throughout the world (*id.* ¶ 7). Many of the Bissell Marks are "federally registered or applied-for" trademarks (*id.*).

PRC is a New York Corporation with its principal place of business in St. James, New York (Krantz Decl., Dkt 26, ¶ 3). Defendant services products returned by consumers to either retailers or to manufacturers so that those used products can be resold (*id.* ¶ 7). Defendant has contracts with these manufacturers and retailers to perform various services such as cleaning, inspecting, testing, reassembling, remanufacturing, and repackaging (*id.*).

Bissell alleges that Defendant "recycles" and "remanufactures" consumer products that have been purchased by a consumer in "new" condition and then returned by the consumer to a retailer in "used" condition (Compl. ¶ 13). Further, PRC has received quantities of used and/or previously purchased Bissell vacuum cleaners from one or more entities (*id.* ¶ 15). For example, Plaintiff alleges that PRC may have obtained (and may continue to obtain) quantities of Bissell vacuum cleaners from retail sellers who are authorized to sell new Bissell vacuum cleaners, but who may not be authorized to sell used, repaired, and/or remanufactured Bissell vacuum cleaners (*id.*).

Bissell further alleges that PRC's remanufacturing of "used" Bissell vacuum cleaners has included inspecting the products, disassembling the products, reassembling the products, repairing the products, cleaning, washing, polishing the products, repacking one or more components of the products, and/or repackaging the products, as well as the replication of Bissell's packaging materials (Compl. ¶¶ 17-18). Bissell alleges that PRC has not marked the remanufactured products or packing with notice that would inform the next consumer that the product is "used" or Defendant has "remanufactured" the products (*id.* ¶ 19). Bissell claims that PRC has induced one or more retailers

to resell the remanufactured Bissell vacuum cleaners without providing such notice to the public (*id.* ¶ 23).

With respect to the Bissell products at issue, PRC states that it provides services pertaining to the Bissell products to a single authorized Bissell retailer/reseller (Def. Brf., Dkt 25 at p. ID# 210; & Ex. 1, Krantz Decl. ¶ 8).  Those services basically consist of inspecting, safety ("hi-pot") testing, cleaning, replacing nonmechanical broken parts with genuine Bissell parts, polishing and repackaging a Bissell product into either its original packaging if available or otherwise into a plain brown box using client-required labeling (*id.*).  PRC's contract with this single authorized Bissell retailer/reseller (since identified as Amazon) has been in place for at least two years, and PRC has serviced Bissell product returns only from this single authorized Bissell retailer/reseller (Krantz Decl. ¶ 8).  According to PRC, the authorized Bissell retailer/reseller resells the Bissell products as "used" products (*id.*).  The authorized Bissell retailer/reseller is not located in Michigan, and the Bissell products serviced by Defendant are not shipped to Michigan or via Michigan (*id.*).

### III.  Legal Standards

Defendant moves for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over it.

### A.  Rule 12(b)(2)

In the context of a Rule 12(b)(2) motion, a plaintiff bears the burden of establishing the existence of jurisdiction.  *Carrier Corp. v. Outokumpu Oyj,* 673 F.3d 430, 449 (6th Cir. 2012)*; Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544*,* 549 (6th Cir. 2007).  This burden varies depending on the manner in which the district court approaches the motion:

> "[I]f the district court determines to decide the issue solely on the basis of written materials, the plaintiff should be required only to make a prima facie case of

> jurisdiction, that is, he need only 'demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.' *Data Disc, Inc. v. Sys. Technology Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) (citation omitted). *Accord: Jetco Electronic Indus., Inc. v. Gardiner*, 473 F.2d 1228 (5th Cir. 1973). However, if the district court concludes that the written submissions have raised issues of credibility or disputed issues of fact which require resolution, it may conduct a preliminary evidentiary hearing. Where this occurs the plaintiff must show by a preponderance of the evidence that jurisdiction exists. *Data Disc*, 557 F.2d at 1285."

*American Greetings Corp. v. Cohn,* 839 F.2d 1164, 1168-69 (6th Cir. 1988) (quoting *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981)); *see also Carrier Corp.,* 673 F.3d at 449.

In this case, the undersigned is considering the motion to dismiss on the parties' written submissions. Where, as here, the court does not conduct an evidentiary hearing, a plaintiff's *prima facie* burden is met by "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In these circumstances, the court does not consider facts proffered by the defendant that conflict with those offered by the plaintiff, and pursuant to Rule 12(b)(2), construes the facts in the light most favorable to the nonmoving party. *Id.*

### B.   Personal Jurisdiction

Personal jurisdiction over an out-of-state defendant arises from "certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)); *see also Carrier Corp.,* 673 F.3d at 449. When a federal court's subject matter jurisdiction over a case is based on a federal question, "personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's

long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[ ] due

process.'"  *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (quoting *Mich. Coalition of*

*Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992)).

Personal jurisdiction can exist as specific jurisdiction and/or general jurisdiction. *Indah v.*

*SEC*, 661 F.3d 914, 920 (6th Cir. 2011).  Michigan's "long-arm" statute extends "limited" or specific

jurisdiction over nonresident corporations pursuant to MICH. COMP. LAWS § 600.715, and "general"

jurisdiction pursuant to MICH. COMP. LAWS § 600.711.  *Neogen Corp.*, 282 F.3d at 888.  Specific

jurisdiction extends only to "claims arising from the defendant's activities that were either within

Michigan or had an in-state effect."  *Id.*  "General jurisdiction, on the other hand, enables a court in

Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue is

related to its activities in the state or has an in-state effect."  *Id.*

If the court determines the relevant long-arm statute authorizes the exercise of jurisdiction

over the defendant, then the court must determine whether exercise of that jurisdiction comports with

constitutional due process.  The due-process inquiry is governed by a three-part test:  (1) whether the

defendant <u>purposefully availed</u> himself of the privilege of acting in the forum state or causing a

consequence in the forum state; (2) whether the <u>cause of action arises from</u> the defendant's activities

there; and (3) whether the acts of the defendant or consequences caused by the defendant have a

substantial enough connection with the forum state to make the exercise of jurisdiction over the

defendant <u>reasonable</u>.  *Southern Machine Co. v. Mohasco Industries, Inc.,* 401 F.2d 374, 381 (6th

Cir. 1968).  If the first two criteria of the due process test are met, "an inference of reasonableness

arises" and "'only the unusual case will not meet this third criterion.'"  *Theunissen v. Matthews*, 935

F.2d 1454, 1461 (6th Cir. 1991) (quoting *American Greetings Corp.,* 839 F.2d at 1170).

**IV. Analysis**

A. Michigan's Long-Arm Statute

The parties present only cursory arguments concerning the requirements of Michigan's long-arm statute, focusing their arguments instead on the due-process inquiry. Defendant asserts that none of the relationships under MICH. COMP. LAWS § 600.711[1] apply to establish general jurisdiction, and Defendant is not subject to specific jurisdiction under any of the five prongs of MICH. COMP. LAWS § 600.715[2] (Def. Brf. at p. ID# 213-215; Def. Reply at p. ID# 706, n.1). Plaintiff asserts that the Court need not independently analyze whether Defendant's conduct satisfies the enumerated criteria under Michigan's long-arm statute since Michigan's statute has been broadly construed to provide for personal jurisdiction consistent with due process (Pl. Resp. at p. ID# 454).

As Plaintiff observes, federal courts have recognized that "[t]he Michigan Supreme Court has broadly construed Michigan's Long-Arm Statute to provide for personal jurisdiction consistent with due process." *Daimler AG v. Shuanghuan Auto. Co.*, No. 2:11-cv-13588, 2013 WL 2250213, at *2 (E.D. Mich. May 22, 2013). When a "'state's jurisdiction extends to the limits imposed by federal constitutional due process requirements, … the two questions become one,'" and an independent analysis under the long-arm statute is unnecessary. *Id.* (quoting *Mich. Coalition of*

---

[1]Under MICH. COMP. LAWS § 600.711, those relationships between a corporation and the state include: "(1) Incorporation under the laws of this state. (2) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745. (3) The carrying on of a continuous and systematic part of its general business within the state."

[2]The five prongs under MICH. COMP. LAWS § 600.715 include "(1) The transaction of any business within the state. (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort. (3) The ownership, use, or possession of any real or tangible personal property situated within the state. (4) Contracting to insure any person, property, or risk located within this state at the time of contracting. (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant."

*Radioactive Material Users*, 954 F.2d at 1176 (citation omitted)). Even if Defendant disputes this construction, the undersigned does not find the preliminary requirements of the long-arm statute dispositive of personal jurisdiction in this case.

With respect to general jurisdiction under MICH. COMP. LAWS § 600.711, the only applicable basis for general jurisdiction is § 711(3), "[t]he carrying on of a continuous and systematic part of its general business within the state." The undersigned finds no basis for general jurisdiction in the record.

Defendant asserts that its most recent contact with Michigan occurred around 2001. Defendant contends that its otherwise sporadic and limited contact with the state does not rise to the level of "continuous and systematic contact" necessary for general jurisdiction. The undersigned agrees.

However, Plaintiff disputes Defendant's assertions concerning general jurisdiction. Plaintiff states that Defendant did not stop its business dealings with Bissell in 2001, and that the parties' relationship continued in 2011 when they engaged in a lengthy series of negotiations relating to remanufacturing (Pl. Resp. at p. ID# 458). Plaintiff states that Defendant's continuous business dealings with Bissell are alone sufficient to establish a *prima facie* showing of general jurisdiction. Further, Plaintiff asserts that Defendant's assertions ignore additional contacts that Defendant has had with Michigan involving entities other than Bissell, specifically: (1) contact with the Whirlpool Company in Benton Harbor, Michigan; (2) communications with national retailers, having significant numbers of stores and employees in Michigan, including Wal-Mart, Target, Best Buy, and Big Lots; (3) participation in tradeshows that Michigan companies attended; and (4) providing

services for original equipment manufacturers that sell products in Michigan (*id.* at p. ID# 445, 458-459).

It is undisputed that the parties had some "business relationship" that ended in 2001 (*see* Def. Brf. at p. ID# 213-214).  Thereafter, in 2011–2012, the parties entertained negotiations for a potential agreement concerning remanufacturing of Plaintiff's products in Canada.  As discussed subsequently in more detail, there is no evidence that those negotiations involved meetings in Michigan or visits to Michigan by Defendant.  Other than some email and telephone communications, the 2011–2012 contacts between the parties occurred in Canada or at locations outside Michigan.  Defendant's past, limited negotiations with Plaintiff, and otherwise tenuous or isolated contact with Michigan, do not establish a basis for general jurisdiction.  *See Houle v. Bert R. Huncilman & Son, Inc.*, No. 12–10188, 2012 WL 6193959, at *2 (E.D. Mich. Dec. 12, 2012).

On the other hand, with regard to limited or specific jurisdiction under MICH. COMP. LAWS § 600.715, even though Defendant's business contact with Michigan has been limited, the undersigned concludes that it is sufficient to meet § 715(1), "[t]he transaction of any business within the state," for purposes of the long-arm statute.  The "'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established by 'the slightest act of business in Michigan.'" *Neogen Corp.,* 282 F.3d at 888 (quoting *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988)).  Thus, with regard to specific or limited jurisdiction, the long-arm statute imposes no impediment to personal jurisdiction provided due process requirements are satisfied.

## B.  Due Process

Defendant argues that even if jurisdiction is established under Michigan law, the requirements of due process cannot be satisfied (Def. Brf. at p. ID# 215-221).  Defendant asserts it

did not target Michigan or make any effort to penetrate the Michigan market in conducting the

activities at issue in this lawsuit (*id.* at p. ID# 222).  Thus, Defendant has not purposefully availed

itself of the benefits of Michigan law and protections, and even if its relationship with Bissell ten

years ago is sufficient to constitute "purposeful availment," the present cause of action does not arise

from Defendant's former activities with Bissell in Michigan (*id.* at p. ID# 216-220).  Defendant

argues that in any event, jurisdiction is not reasonable in Michigan because Defendant's business

activities have no substantial connection to Michigan (*id.* at p. ID# 220-221).

Plaintiff argues to the contrary that both the "purposeful availment" and "arising from" due

process prongs are met (Pl. Resp. at p. ID# 455-456).  And if the first two elements of personal

jurisdiction are satisfied, then an inference of reasonableness arises (*id.* at p. ID# 456).  *See Daimler

AG*, 2013 WL 2250213, at *6.

### 1.  *"Purposeful Availment"*

The purposeful availment requirement protects an individual's liberty interest in not being

subjected to binding judgments of a foreign jurisdiction absent "fair warning" that his activity may

bring him within the authority of those courts.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462,

471-72 (1985).  "'Purposeful availment,' the 'constitutional touchstone' of personal jurisdiction" is

met "where the defendant's contacts with the forum state 'proximately result from actions by the

defendant *himself* that create a 'substantial connection' with the forum State," such that he "'should

reasonably anticipate being haled into court there.'"  *Neogen Corp.*, 282 F.3d at 889 (quoting *Burger

King,* 471 U.S. at 474-75) (citation and quotation omitted).  This requirement ensures a defendant

will not be "haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

contacts, or of the 'unilateral activity of another party or a third person.'" *Id.* (quoting *Burger King,* 471 U.S. at 475 (internal citation omitted).

Plaintiff argues that "purposeful availment" is established by Defendant's numerous contacts with Bissell, including:

- e-mails to Bissell employees in Michigan

- business documents sent to Bissell employees in Michigan (including documents with negotiations and confidential information)

- participation in multiple telephone conversations with Bissell employees in Michigan

- personal meetings with Bissell employees

- the execution of a Mutual Nondisclosure Agreement (NDA) with Bissell (Pl. Resp., Ex. 7)

- the negotiation of another agreement with Bissell, the Remanufacturing Agreement (*id.*, Ex. 9)[3]

(Pl. Resp. at p. ID# 455).

Plaintiff asserts that these repeated contacts with Bissell all concerned the remanufacturing of a Michigan company's products, and they were not random (Pl. Resp. at p. ID# 455). Moreover, through the execution of the NDA alone, Defendant availed itself of the benefits and protections of Michigan law, since the NDA contains a forum selection clause providing for exclusive jurisdiction in Michigan (*id.*).

Even viewing controverted facts in favor of Plaintiff, the undersigned does not find that Defendant's limited contacts with Bissell and/or Michigan constitute purposeful availment for purposes of personal jurisdiction. The primary basis of Plaintiff's purposeful availment argument

---

[3]Plaintiff states that in both the NDA and the unexecuted Remanufacturing Agreement, Defendant submitted to the exclusive jurisdiction of the courts of Michigan.

is the contacts between Defendant and Bissell in 2011–2012.  And the primary, if not exclusive, basis for Defendant's contacts with Bissell in 2011–2012 was the exploration and negotiation of a remanufacturing agreement with Bissell Canada Corporation (Pl. Resp., Remfg. Ag., Ex. 9), which Bissell ultimately declined to execute (Pl. Resp. at p. ID# 447).  Although Plaintiff asserts that Defendant has extensive contacts with Michigan, the undersigned finds the record to the contrary.

Despite Plaintiff's recitation of Defendant's 2011–2012 negotiations and contacts with "Bissell" generally (Pl. Resp. at p. ID# 445-447), the record concerning these contacts indicates that (1) they involved the Canadian remanufacturing agreement; (2) only a few meetings took place between the parties and the meetings were not in Michigan; and (3) the other communications between the parties, which involved telephone and email exchanges with Bissell Michigan employees, were limited and incidental to the Canadian negotiations.  The one meeting cited in detail by Plaintiff took place on September 29, 2011 in Canada in a rented office between several representatives of Plaintiff and Defendant and a third party, Return Trax,[4] (*id.* at p. ID# 445-446 & Ex. 18; Def. Brf. at p. ID# 707 & Ex. A, Krantz Dep. at 74).)[5]  The only other meetings identified were two meetings at trade shows outside of Michigan.

While Plaintiff cites various telephone and email exchanges to Bissell in Michigan, these communications addressed the Canadian remanufacturing program and the connection to Michigan was that these Bissell employees were based in Bissell's Grand Rapids office.  Similarly, although Plaintiff cites the October 25, 2011 NDA as strongly supporting "purposeful availment" because the

---

[4]Return Trax was Defendant's strategic partner.

[5]Bissell representatives included Scott Boles, Steve Stevens, Craig Emmerson, Jason Saksewski, Mike Wheeler, George Dyole, and Jim Bartula; PRC Representatives included Darren Krantz and Cliff Locks (Pl. Resp, Ex. 1, Boles Decl. ¶ 4).

agreement was executed by Bissell Homecare, a Michigan company, the NDA was a fairly standard agreement and merely a vehicle for the exchange of information necessary to negotiate the Remanufacting Agreement, and this was between Defendant and Bissell Canada Corporation (*see* Pl. Resp., Ex. 9).  The undersigned does not find the NDA significant in the analysis of purposeful availment given the context in which it was executed.

The nature and circumstances of the 2011–2012 contacts between the parties do not result from actions by Defendant that create a "substantial connection" with Michigan, such that Defendant "'should reasonably anticipate being haled into court there.'"  *See Neogen Corp.*, 282 F.3d at 889. The telephone and email contacts with any Bissell employees in Michigan resulted because Bissell's decision-makers were apparently located in Michigan, not because Defendant was furthering its business in Michigan.  *See Rice v. Karsch*, 154 F. App'x 454, 462-63 (6th Cir. 2005) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 723 (6th Cir. 2000)).  These contacts are the types of "random," "fortuitous," or "attenuated" contacts that preclude a finding of "purposeful availment." *See id.*; *see also Neogen Corp.*, 282 F.3d at 889.

The alleged additional contacts or connections with Michigan cited by Plaintiff add little or nothing to support purposeful availment.  The direct contacts with Michigan cited by Plaintiff are alleged communications made on behalf of Defendant by former employee Cliff Locks with Whirlpool, headquartered in Michigan (Pl. Resp., Ex. 2 ¶ 9).  Locks states that the purpose of his communications was "to establish a business relationship with Whirlpool" (*id.*).  Even crediting these communications as alleged, in Plaintiff's favor, the undersigned finds they are a negligible addition to the showing of purposeful availment, which still falls far short of a "substantial connection" with Michigan.  *See Neogen Corp.*, 282 F.3d at 889.

Plaintiff also cites Defendant's purported indirect connection to Michigan in arguing that

Defendant has availed itself of the Michigan forum by contracting with Amazon, a retailer that sells

products to Michigan residents (Pl. Resp. at p. ID# 457).   As Defendant observes, however,

purposeful availment requires more than merely placing goods in the "stream of commerce."  *See*

*Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 479 (6th Cir. 2003) (indicating a

preference for Justice O'Connor's "stream of commerce 'plus'" theory:   "'[t]he placement of a

product into the stream of commerce, without more, is not an act of the defendant purposefully

directed toward the forum State'" (citation omitted)).

Under the "stream of commerce 'plus' test,":

> [t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." [*Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 112 (1987)].  The court must look to "[a]dditional conduct" of the defendant "indicat[ing] an intent or purpose to serve the market in the forum State ..." *Id.* As examples of additional conduct satisfying the "plus" factor, Justice O'Connor provided: "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* "[A] defendant's awareness that the stream of commerce *may* or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* (emphasis added).

*Providers Access & Sav. Sys., Inc. v. Regence Group, Inc.,* No. 06-15367, 2007 WL 1106145, at *4

(E.D. Mich. Apr. 12, 2007).  Plaintiff's bare assertion that Defendant's Amazon contract involves

the sale of products to Michigan residents, without more, again does little to support a finding of

purposeful availment under the stream of commerce theory.

To the extent Plaintiff argues that its shortcoming in proofs regarding Defendant's Michigan

contacts results directly from Defendant's failure to provide any meaningful jurisdictional discovery

(Pl. Resp. at p. ID# 453-454), the undersigned is not so persuaded. Plaintiff's assertion that further discovery would produce additional supporting evidence of *significant* Michigan contacts by Defendant is speculative. Plaintiff's proofs fall far short of the required showing for purposeful availment, such that Defendant "'should reasonably anticipate being haled into court there.'" *See Neogen Corp.*, 282 F.3d at 889 (quoting *Burger King,* 471 U.S. at 474) (citation and quotation omitted).

Having found that Plaintiff's argument fails under the purposeful-availment prong of the due-process test, Plaintiff cannot meet the requisite showing for personal jurisdiction regardless whether the other prongs of the test are met. Nonetheless, the undersigned will briefly address the remaining prongs.

### 2. "*Arising From*"

Plaintiff argues that the "arising from" prong is met because the cause of action in this case, Defendant's unlawful remanufacturing of Bissell's vacuum cleaners, is a direct result of Defendant's activities with Bissell, a Michigan company, and all of Defendant's contacts concerned the "exact same conduct" (Pl. Resp. at p. ID# 455-456). Plaintiff continues that only after securing Bissell's confidential remanufacturing information was Defendant in the position to undertake its relationship with Amazon that is now the subject of this lawsuit (*id.* at p. ID# 456).

Having fully considered the record, the undersigned is not persuaded by Plaintiff's argument. Regarding the "arising from" requirement under *Southern Machine*, the Sixth Circuit has held that "[a]n action will be deemed not to have arisen from the defendant's contacts with the forum state only when they are unrelated to the operative facts of the controversy." *Creech v. Roberts,* 908 F.2d 75, 80 (6th Cir. 1990), *overruled on state-law grounds by Goldstein v. Christiansen,* 638 N.E.2d 541

(Ohio 1994) (citations omitted).  In this case, most if not all of Defendant's contacts with Michigan involved the parties' exploration of the potential Canadian agreement, and any communications that were purposefully directed at Michigan were only fortuitous and attenuated.  Plaintiff has not offered any convincing argument or specific evidence that the Complaint in this legal action, which is based on Defendant's contract with Amazon, "arises from" the Canadian agreement/negotiations between Plaintiff and Defendant.  Plaintiff only belatedly sought to implicate the NDA, signed in 2011 with respect to the Canadian negotiations, as supporting an independent breach of contract claim (Pl. Mot to Amend., Dkt 54).  In short, it appears that this trademark infringement action does not arise from the Defendant's 2011–2012 contacts with Plaintiff.  Further, the record suggests that it was Bissell not PRC which withdrew from the relationship contemplated by the remanufacturing agreement.

### 3.  *"Reasonableness"*

Plaintiff argues that because the first two prongs of the due-process test are met, an inference of reasonableness arises.  And, even if not, the factors to be considered—the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief, *Daimler AG*, 2013 WL 2250213, at *6—all weigh in favor of this court exercising jurisdiction (Pl. Resp. at p. ID# 456).  Thus, based on Defendant's alleged willingness to conduct business in Michigan and its agreement to be subject to the jurisdiction of Michigan, Defendant cannot now genuinely claim that Michigan jurisdiction presents any meaningful burden (*id.*).  Moreover, both the state of Michigan and Plaintiff have an interest in keeping this action in the forum, in order to ensure the citizens of Michigan do not receive deceptively marked (and potentially dangerous) products and to ensure that Bissell's trademarks are properly enforced (*id.*).

The reasonableness of asserting jurisdiction is assessed by considering "'the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest in other states in securing the most efficient resolution of controversies.'" *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996) (citation omitted).  For the reasons stated above with regard to "purposeful availment," the undersigned concludes that it would not be reasonable to assert personal jurisdiction over Defendant in this case.  While Plaintiff and Michigan/its citizens have an interest in preventing deceptively marked (and potentially dangerous) products in the market and in ensuring that Bissell's trademarks are properly enforced, the burden on Defendant to defend this case in Michigan is unreasonable under the circumstances presented.  Defendant is a New York corporation with its principal place of business in St. James, New York, and does not have a "substantial enough" connection with Michigan to make the exercise of jurisdiction over the Defendant reasonable. *See Southern Machine,* 401 F.2d at 381.

## C.  Motion to Amend the Complaint

After Defendant filed its Motion to Dismiss and Plaintiff filed its Response, on March 26, 2014, Plaintiff filed the pending Motion for Leave to File Amended Complaint (Dkt 54) ("motion to amend").  Plaintiff's proposed amended complaint adds an additional claim for relief against Defendant based on Defendant's alleged breach of the NDA entered into between the parties in 2011 (Dkt 54 ¶ 1).  The undersigned determined that the motion to dismiss and motion to amend would be considered separately and consecutively, with the motion to dismiss being addressed as a preliminary matter (Or., Dkt 62).  Having now determined that the court lacks personal jurisdiction over Defendant, the undersigned declines to address the motion to amend since it appears inappropriate to decide other motions in the case given the lack of personal jurisdiction (*see id.*).

In any event, having reviewed the motion to amend and Defendant's response (Dkt 63), and having considered all circumstances, the undersigned would deny leave to file the proposed amended complaint.  Pursuant to FED. R. CIV. P. 15(a)(2), "[t]he court should freely give leave when justice so requires."  A district court should consider undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of amendment.  *Rice,* 154 F. App'x at 464 (citing *Hageman v. Signal L.P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir. 1973)).  Here, the factors of undue delay, undue prejudice and futility all weigh against leave to amend given that (1) Plaintiff did not seek an amendment until the motion to dismiss for lack of personal jurisdiction was extensively briefed, and months after the basis of the amendment was or should have been known to Plaintiff based on Defendant's Answer and filing of the Krantz declaration (Dkts 14, 21); and (2) the alleged connection between the NDA and the claims in the original complaint is tenuous.

## V.  Conclusion

Ultimately, due process concerns are governed by the standard articulated in *International Shoe* and expounded by its progeny:  ensuring a defendant has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463).  Here, the undersigned concludes that this standard is not met.  Plaintiff has failed to meet its *prima facie* burden of "'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'"  *See Neogen Corp.*, 282 F.3d at 887.

Accordingly, the undersigned recommends that this case be dismissed for lack of personal jurisdiction over Defendant PRC Industries, Inc.

Respectfully submitted,

Date: May 12, 2014                         /s/ Ellen S. Carmody
                                         ELLEN S. CARMODY
                                         United States Magistrate Judge


       OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).